

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

U.S. DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
FILED

NOV 1 3 2025

CLERK, U.S. DISTRICT COURT
By_____
Deputy

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | | |
| | | |
| v. | | No. 4:25-CR-259-P |
| | | |
| CAMERON ARNOLD | (01) | [Supersedes the following Indictments Returned on October 15, 2025: |
| a/k/a "Autumn Hill" | | |
| ZACHARY EVETTS | (02) | |
| BENJAMIN SONG | (03) | 4:25-CR-259-P [Cameron Arnold (01) and |
| SAVANNA BATTEN | (04) | Zachary Evetts (02)] |
| BRADFORD MORRIS | (05) | |
| a/k/a "Meagan Morris" | | |
| MARICELA RUEDA | (06) | 4:25-CR-265-O [Daniel Rolando Sanchez- |
| ELIZABETH SOTO | (07) | Estrada] |
| INES SOTO | (08) | |
| DANIEL ROLANDO | (09) | Adding Defendants 03-09 |
| SANCHEZ-ESTRADA | | |

## SUPERSEDING INDICTMENT

The Grand Jury Charges:

## The Attack

1.      Late at night on July 4, 2025, a North Texas Antifa Cell (Antifa Cell) of at least eleven operatives rioted and attacked the Prairieland Detention Center (Prairieland) in Alvarado, Texas, which the U.S. Department of Homeland Security was using to house illegal aliens awaiting deportation. Members of the Antifa Cell wore "black bloc"—dark clothing with head and face coverings that concealed their identities. This tactic is designed not only to hide each individual member's identity but also to aid and abet those members engaged in illegal acts by making individual members indistinguishable from one another to law enforcement. Some members also brought body armor and firearms to

**Superseding Indictment – Page 1**

Prairieland. After arriving, the Antifa Cell began shooting and throwing fireworks (explosives) towards Prairieland and vandalizing vehicles and a guard shed on Prairieland property:



2.      Alarmed at the presence of unauthorized persons on Prairieland property late at night, unarmed DHS correctional officers inside the facility went outside to investigate. Other DHS personnel called local police for assistance. Within minutes, an officer from the Alvarado Police Department arrived on scene, stepped out of his police cruiser, and began issuing commands to Nathan Baumann, (a coconspirator not named as defendant

herein) who was one of the rioters vandalizing government property. Baumann, who was dressed in black bloc, continued to run towards **Benjamin Song**, who was dressed in black bloc and holding a rifle. **Song** yelled, "get to the rifles!" and then, moments later, opened fire on the officers, striking the Alvarado police officer in the neck area as the unarmed DHS correctional officers ducked and ran for cover. The wounded officer fell to the ground but was able to return a few shots. **Song** fired additional rounds at the wounded officer and the DHS correctional officers until his rifle jammed. The Antifa Cell then fled the scene.

3.      Police arrested most of the Antifa Cell shortly after the attack, many near the scene, including **Zachary Evetts**, **Bradford Morris**, **Elizabeth Soto**, **Ines Soto**, **Savanna Batten**, and **Maricela Rueda**, and Seth Sikes, Baumann, and Joy Gibson (coconspirators not named as defendants herein). Police arrested **Cameron Arnold** the following day. **Song** escaped and remained at large with the help of others until his capture on July 15, 2025.

## The Antifa Cell

4.      Antifa is a militant enterprise made up of networks of individuals and small groups primarily ascribing to a revolutionary anarchist or autonomous Marxist ideology, which explicitly calls for the overthrow of the United States Government, law enforcement authorities, and the system of law. Antifa adherents have espoused insurrection and advocated violence to affect the policy and conduct of the U.S. government by intimidation and coercion. Beginning in 2025, Antifa adherents have increasingly targeted agents and facilities related to DHS's Immigration and Customs

Enforcement (I.C.E.) in opposition to I.C.E.'s deportation actions and the U.S. government's policy on the removal of illegal aliens. The Antifa campaign involves coordinated efforts to obstruct enforcement of Federal law through organized riots, violent assaults, and armed confrontations with I.C.E. and law enforcement officers.

5.      Most of the Antifa Cell looked to **Song** as a leader. **Song** and others recruited for the Antifa Cell from various ideologically aligned groups. For example, **Ines Soto**, **Elizabeth Soto**, and **Batten** were part of a group that created and distributed insurrectionary materials called "zines." **Song** also recruited at gun ranges and close-quarters combat training sessions he conducted.

6.      Altogether, members of the Antifa Cell acquired over 50 firearms in Fort Worth, Grand Prairie, Dallas, and elsewhere. **Song**, for example, bought and built numerous AR-platform rifles, some of which he distributed to his co-defendants, and at least one of which featured a binary trigger. A binary trigger is a device that allows a firearm to fire more rapidly by causing two bullets to fire with each trigger cycle.

7.      To hide their involvement in illegal conduct, the Antifa Cell emphasized and practiced "operational security" or "opsec" in their communications. For example, members used an encrypted messaging app to coordinate with each other. This app allowed for group chats and had auto-delete and delete-after-a-defined-time functions, which caused communications among the Antifa Cell to be permanently deleted. Most Antifa Cell members used monikers in the group chats to hide their true identities. Group chats dedicated to planning direct actions were limited to trusted participants and, even among trusted participants, were exclusive to those with a need-to-know.

## The Defendants

8.    **Song** was a resident of Dallas and used the monikers "Champaigne" and "Delete."

9.    **Arnold**, a/k/a Autumn Hill, was a resident of Dallas and used the moniker "Not Beating the Little Creature Allegations."

10.    **Batten** was a resident of Fort Worth.

11.    Baumann was a resident of College Station and used the moniker "Bible."

12.    **Evetts** was a resident of Waxahachie and used the moniker "Jon ValJon."

13.    Gibson was a resident of Dallas and used the monikers "FoxGlove" and "Rowan."

14.    **Morris**, a/k/a Meagan Morris, was a resident of Dallas and used the moniker "Herald of the Mad God."

15.    **Rueda** was a resident of Fort Worth and used the moniker "mal crieda."

16.    **Elizabeth Soto** was a resident of Fort Worth.

17.    **Ines Soto** was a resident of Fort Worth and used the moniker "N."

18.    **Daniel Sanchez Estrada** was a resident of Fort Worth.

19.    Seth Sikes was a resident of Kennedale and used the moniker "Wise."

## The Plan

20.    In the days prior to July 4, the Antifa Cell planned and coordinated the riot and attack against Prairieland using several group chats on an encrypted messaging app. One chat—which was named the "4th of July Party!" chat—consisted of the core group that planned the action (the "Core Chat").

The Core Chat originally had eight participants, but two dropped out for "opsec reasons" after they stated they would not attend the July 4 action. The six remaining members were **Evetts**, **Song**, **Morris**, Gibson, **Rueda**, and Sikes. Members in the Core Chat conducted detailed reconnaissance and planning. For example, **Evetts** and **Rueda** attended a peaceful protest at Prairieland earlier in the day on July 4 in order to scout the facility. **Evetts** relayed in the Core Chat details about the fences and gates, including the time it took for the gates to open and close and how long it took trash pickup to get in and out of the facility. **Rueda** circulated a picture of a security camera at the entrance to the facility and noted that a nearby house had a doorbell camera. **Evetts** assessed that "signs, laws, and social pressure are the only things keeping someone from getting right up to the fence." **Rueda** posted a Google map that showed the location of local police departments in relation to Prairieland.

21.    The members of the Core Chat planned what materials to bring to the riot and attack, including firearms, medical kits, and fireworks. For example, **Evetts** asked the Core Chat group if they would be "doing black bloc and rifles?" Gibson stated that they would be wearing bloc and keeping "kit" on hand, "bringing a wagon to hold armor and rifles." When **Rueda** suggested that "rifles might make the situation more hot," **Song** replied that rifles would be used to intimidate law enforcement, stating, "Cops are not trained or equipped for more than one rifle so it tends to make them back off."

22.    Song also advertised the July 4 riot on a larger chat (the "Large Chat") but left out certain details in an effort to avoid being identified as one of the organizers. As

**Rueda** warned in the Core Chat, "if anyone pins us for 'organizing' that's where we'd lose."

23.     The Large Chat included **Song**, **Arnold**, Baumann, **Evetts**, Gibson, **Morris**, **Rueda**, **Ines Soto**, and dozens of "trusted" individuals. **Song** circulated a flyer for the Prairieland riot in the Large Chat, stating "Share with trusted folks only. Do not Post. Mask up! Be loud!" Members of the Large Chat discussed the event as a "noise demonstration" involving fireworks.

24.     Participants in the Large Chat expressed concerns about law enforcement's response to the action. For example, Baumann noted that the area around Prairieland was "pretty rural so it will be difficult to lose [I.C.E] if shi[t] hits the fan. Plus seems like a lot of the locals in the area will not be happy about our presence." **Ines Soto** responded that they were probably "more likely to deal with local PD than I.C.E." but suggested that "the level of concern seems way over the top to me." Throughout the Large Chat, **Ines Soto** and **Rueda** attempted to downplay concerns about law enforcement, urging action and referring to noise demonstrations as "low risk."

25.     In addition to the encrypted messaging group chats, **Song**, **Arnold**, **Morris**, and others met in person on July 3 at a "gear check" at **Morris** and **Arnold's** residence. There, **Arnold** asked **Song** if they would be bringing guns to the July 4 action. **Song** replied that they would because he would not be going to jail. **Song** repeated words to this effect multiple times throughout the evening, putting everyone there on notice of his intent to shoot at police rather than be arrested.

26.     **Song**, **Arnold**, **Evetts**, Gibson, **Morris**, and **Rueda** staged at **Morris** and **Arnold's** house on the evening of July 4 and carpooled to Prairieland. **Elizabeth Soto**, **Ines Soto**, and **Batten** drove together and arrived at Prairieland a little later than **Song** and the others. Baumann drove by himself from College Station. The Antifa Cell brought a total of eleven firearms, four of which had been purchased by **Song**.

27.     Paragraphs 1 through 26 are incorporated in each Count of this Indictment.

**[Remainder of page intentionally left blank]**

Count One
Riot
(Violation of 18 U.S.C. §§ 2101 and 2)

On or about July 4, 2025, in the Northern District of Texas, the defendants,
**Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Benjamin Song**,
**Savanna Batten**, **Bradford Morris**, also known as Meagan Morris, **Maricela Rueda**,
**Elizabeth Soto**, **Ines Soto**, aiding and abetting each other, used a facility of interstate
commerce, that is, the internet, cell phones, and automobiles, with intent to organize,
participate in, and carry on a riot, as that term is defined in 18 U.S.C. § 2102; with intent
to commit an act of violence in furtherance of a riot; and with intent to aid and abet each
other and others in participating in and carrying on a riot and committing any act of
violence in furtherance of a riot; and during the course of such use and thereafter
performed and attempted to perform other overt acts, including engaging in acts of
violence which acts constituted a clear and present danger of damage and injury to the
property and person of another, including but not limited to:

- Shooting and throwing fireworks and explosives at the Prairieland Detention
  Center and its perimeter fence;

- Slashing tires on a government vehicle;

- Spray painting graffiti on government and private property and vehicles;

- Destroying a closed circuit camera;

- Shooting at a police officer and unarmed DHS correctional officers; and

- Dressing in black bloc in order to prevent law enforcement from identifying
  individuals engaging in the acts described above.

All in violation of 18 U.S.C. §§ 2101 and 2, and *Pinkerton v. United States*, 66 S. Ct. 1180 (1946).

**[Remainder of page intentionally left blank]**

Count Two
Providing Material Support to Terrorists
(Violation of 18 U.S.C. § 2339A)

On or about July 4, 2025, in the Northern District of Texas, the defendants,

**Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Benjamin Song**,

**Savanna Batten**, **Bradford Morris**, also known as Meagan Morris, **Maricela Rueda**,

**Elizabeth Soto**, and **Ines Soto**, provided and attempted to provide material support and

resources, as those terms are defined in 18 U.S.C. § 2339A(b)(1), and did conceal and

disguise the nature of the material support and resources, including property, services,

training, communications equipment, weapons, explosives, personnel (including

themselves), and transportation, knowing and intending that they were to be used in

preparation for, and in carrying out, violations of 18 U.S.C. §§ 844(f), 1361 and 1114,

and in preparation for and carrying out the concealment of an escape from such

violations.

All in violation of 18 U.S.C. §§ 2339A and *Pinkerton v. United States*, 66 S. Ct.

1180 (1946).

<u>Count Three</u>
Conspiracy to Use and Carry an Explosive
(Violation of 18 U.S.C. § 844(m))

In and around June and July 2025, in the Northern District of Texas, the

defendants, **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Benjamin**

**Song**, **Savanna Batten**, **Bradford Morris**, also known as Meagan Morris, **Maricela**

**Rueda**, **Elizabeth Soto**, and **Ines Soto**, along with others known and unknown, did

knowingly combine, conspire, confederate and agree to engage in conduct in violation of

18 U.S.C. §§ 844(h)(1) and (2), namely to: use an explosive to commit a felony and carry

an explosive during the commission of a felony, that is, a riot, in violation of 18 U.S.C.

§ 2101.

All in violation of 18 U.S.C. § 844(m) (18 U.S.C. §§ 844(h)(1) & (2)).

<u>Count Four</u>
Use and Carry an Explosive
(Violation of 18 U.S.C. §§ 844(h)(1) and (2))

On or about July 4, 2025, in the Northern District of Texas, the defendants, **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Benjamin Song**, **Savanna Batten**, **Bradford Morris**, also known as Meagan Morris, **Maricela Rueda**, **Elizabeth Soto**, and **Ines Soto**, aiding and abetting each other, did knowingly use an explosive to commit any felony (a riot); and did carry an explosive during the commission of any felony (a riot).

In violation of 18 U.S.C. §§ 844(h)(1) & (2) and 2, and *Pinkerton v. United States*, 66 S. Ct. 1180 (1946).

<u>Count Five</u>
Attempted Murder of Officers and Employees of the United States
(Violation of 18 U.S.C. §§ 1114(a)(3) and 2)

On or about July 4, 2025, in the Northern District of Texas, **Benjamin Song**, aided

and abetted by **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**,

**Bradford Morris**, also known as Meagan Morris, and **Maricela Rueda**, did, with malice

aforethought, unlawfully attempt to kill Correctional Officer-1, a federal officer and

employee engaged in and on account of the performance of his/her official duties.

In violation of 18 U.S.C. §§ 1114(a)(3) and 2, and *Pinkerton v. United States*, 66

S. Ct. 1180 (1946).

<u>Count Six</u>
Attempted Murder of Officers and Employees of the United States
(Violation of 18 U.S.C. §§ 1114(a)(3) and 2)

**Benjamin Song**, aided and abetted by **Cameron Arnold**, also known as Autumn

Hill, **Zachary Evetts**, **Bradford Morris**, also known as Meagan Morris, and **Maricela**

**Rueda**, did, with malice aforethought, unlawfully attempt to kill Correctional Officer-2, a

federal officer and employee engaged in and on account of the performance of his/her

official duties.

In violation of 18 U.S.C. §§ 1114(a)(3) and 2, and *Pinkerton v. United States*, 66

S. Ct. 1180 (1946).

Count Seven
Attempted Murder of Officers and Employees of the United States
(Violation of 18 U.S.C. §§ 1114(a)(3) and 2)

On or about July 4, 2025, in the Northern District of Texas, **Benjamin Song**, aided and abetted by **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**, **Bradford Morris**, also known as Meagan Morris, and **Maricela Rueda**, did, with malice aforethought, unlawfully attempt to kill Alvarado Police Department Officer-1, a person assisting a federal officer and employee engaged in and on account of the performance of his/her official duties.

In violation of 18 U.S.C. §§ 1114(a)(3) and 2, and *Pinkerton v. United States*, 66 S. Ct. 1180 (1946).

<u>Count Eight</u>
Discharging a Firearm During, in Relation to, and in Furtherance of a Crime of Violence
(Violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.)

On or about July 4, 2025, in the Northern District of Texas, **Benjamin Song**, aided

and abetted by **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**,

**Bradford Morris**, also known as Meagan Morris, and **Maricela Rueda**, knowingly

discharged a firearm, namely a rifle, during and in relation to a crime of violence,

namely, attempted murder of a federal officer, in violation of 18 U.S.C. § 1114, as

charged in Count Five of this Indictment, for which the defendants may be prosecuted in

a court of the United States.

In violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, and *Pinkerton v. United*

*States*, 66 S. Ct. 1180 (1946).

<u>Count Nine</u>

Discharging a Firearm During, in Relation to, and in Furtherance of a Crime of Violence
(Violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.)

On or about July 4, 2025, in the Northern District of Texas, **Benjamin Song**, aided

and abetted by **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**,

**Bradford Morris**, also known as Meagan Morris, and **Maricela Rueda**, knowingly

discharged a firearm, namely a rifle, during and in relation to a crime of violence,

namely, attempted murder of a federal officer, in violation of 18 U.S.C. § 1114, as

charged in Count Six of this Indictment, for which the defendants may be prosecuted in a

court of the United States.

In violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, and *Pinkerton v. United*

*States*, 66 S. Ct. 1180 (1946).

<u>Count Ten</u>
Discharging a Firearm During, in Relation to, and in Furtherance of a Crime of Violence
(Violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2.)

On or about July 4, 2025, in the Northern District of Texas, **Benjamin Song**, aided

and abetted by **Cameron Arnold**, also known as Autumn Hill, **Zachary Evetts**,

**Bradford Morris**, also known as Meagan Morris, and **Maricela Rueda**, knowingly

discharged a firearm, namely a rifle, during and in relation to a crime of violence,

namely, attempted murder of a person assisting a federal officer, in violation of 18 U.S.C.

§ 1114, as charged in Count Seven of this Indictment, for which the defendants may be

prosecuted in a court of the United States, and in so doing knowingly discharged said

firearm in furtherance of the commission of this offense.

In violation of 18 U.S.C. §§ 924(c)(1)(A)(iii) and 2, and *Pinkerton v. United*

*States*, 66 S. Ct. 1180 (1946).

<u>Count Eleven</u>
Corruptly Concealing a Document or Record
(Violation of 18 U.S.C. § 1512(c)(1))

Between on or about July 5 and 6, 2025, in the Northern District of Texas and elsewhere, the defendant, **Daniel Rolando Sanchez Estrada**, did corruptly conceal a record, document, and other object, and attempted to do so, with the intent to impair its integrity and availability for use in an official proceeding, that is, **Daniel Rolando Sanchez Estrada** transported a box that contained numerous Antifa materials, such as insurrection planning, anti-law enforcement, anti-government, and anti-immigration enforcement documents and propaganda, from his residence in Garland, Texas, to a location in Denton, Texas, intending to conceal the contents of the box and impair its availability for use in a federal grand jury and federal criminal proceeding.

In violation of 18 U.S.C. § 1512(c)(1).

Count Twelve
Conspiracy to Conceal Documents
(Violation of 18 U.S.C. § 1512(k))

Between on or about July 5 and 6, 2025, in the Northern District of Texas and elsewhere, the defendants, **Daniel Rolando Sanchez Estrada** and **Maricela Rueda**, and others known and unknown, did knowingly and willfully combine, conspire, confederate, and agree to corruptly conceal a record, document, and other object with the intent to impair its availability for use in an official proceeding, in violation of 18 U.S.C. § 1512(c)(1).

Purpose of the Conspiracy

The purpose of the conspiracy was for **Sanchez** and **Rueda** to conceal documents and other objects that would implicate **Rueda** in the riot and shooting at the Prairieland Detention Center that occurred on July 4, 2025.

Manner and Means

**Sanchez, Rueda**, and others known and unknown, sought to accomplish the purpose of the conspiracy by having **Sanchez** conceal incriminating evidence, including a box that contained Antifa materials, such as insurrection planning, anti-law enforcement, anti-government, and anti-immigration enforcement documents and propaganda, which was connected to **Rueda**. **Sanchez** moved this evidence from his residence in Garland, Texas, to a location in Denton, Texas. **Sanchez** did so intending to conceal the contents of the box and impair its availability for use in an official proceeding, that is, a federal grand jury and a federal criminal proceeding.

Overt Acts

In furtherance of the conspiracy and to effect its purpose, on or about July 6, 2025, in the Northern District of Texas and elsewhere, **Sanchez** took the box of Antifa materials described above from his residence in Garland, Texas, and moved it to an apartment in Denton, Texas.

All in violation of 18 U.S.C. § 1512(k).

A TRUE BILL.

_YM Davey_

FOREPERSON

NANCY E. LARSON
ACTING UNITED STATES ATTORNEY

SHAWN SMITH
Assistant United States Attorney
Texas State Bar No. 24033206
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Email: Shawn.Smith2@usdoj.gov

FRANK L. GATTO
Assistant United States Attorney
Texas State Bar No. 24062396
801 Cherry Street, Suite 1700
Fort Worth, Texas 76102
Telephone: 817-252-5200
Email: Frank.Gatto@usdoj.gov

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

---

THE UNITED STATES OF AMERICA

v.

CAMERON ARNOLD (01)
a/k/a "Autumn Hill"
ZACHARY EVETTS (02)
BENJAMIN HANIL SONG (03)
SAVANNA BATTEN (04)
BRADFORD MORRIS (05)
a/k/a "Megan Morris"
MARICELA RUEDA (06)
ELIZABETH SOTO (07)
INES SOTO (08)
DANIEL ROLANDO SANCHEZ-ESTRADA (09)

---

SUPERSEDING INDICTMENT

18 U.S.C. §§ 2101 and 2
Riot
Count 1

18 U.S.C. § 2339A
Providing Material Support to Terrorists
Count 2

18 U.S.C. § 844(m)
Conspiracy to Use and Carry an Explosive
Count 3

18 U.S.C. § 844(h)(1) and (2)
Use and Carry an Explosive
Count 4

18 U.S.C. §§ 1114(a)(3) and 2
Attempted Murder of Officers and Employees of the United States
Counts 5-7

18 U.S.C. §§ 924(c)(1)(A)(iii) and 2
Discharging a Firearm During, in Relation to, and in Furtherance of a Crime of Violence
Counts 8-10

18 U.S.C. § 1512(c)(1)
Corruptly Concealing a Document or Records
Count 11

18 U.S.C. § 1512(k)
Conspiracy to Conceal Documents
Count 12

A true bill rendered

FORT WORTH _____ FOREPERSON

Filed in open court this 13th day of November, 2025.

**All defendant's in Federal custody**

UNITED STATES MAGISTRATE JUDGE
Pending District Court Number: 4:25-CR-259-P (01 & 02);
4:25-CR-265-O (05)
Pending Magistrate Court Number: 4:25-MJ-468-BJ; 4:25-MJ-452-BJ; 4:25-MJ-451-BJ; 4:25-MJ-479-BP; 4:25-MJ-495-BJ