UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**UNITED STATES OF AMERICA,**

　Plaintiff,

v.                                             No. 4:25-cr-00259-P

**DANIEL ROLANDO SANCHEZ
ESTRADA (09),**

　Defendant.

## MEMORANDUM OPINION & ORDER

Before the Court is Defendant Daniel Rolando Sanchez Estrada's Motion to Suppress Evidence. ECF No. 202. Having reviewed the filings and after oral arguments on the Motion at the February 12, 2026 hearing, the Court hereby **DENIES** the Motion.

### BACKGROUND

On July 4, 2025, a group of individuals went to the Prairieland Detention Center in Alvarado, Texas. ECF No. 127 at 1. After arriving, individuals in the group began shooting fireworks and vandalizing government property. ECF No. 127 at 2. Allegedly, at least one individual open-fired on the officers, striking an Alvarado police officer. ECF No. 127 at 3. Shortly after the event, police arrested numerous individuals, one of which being Defendant Maricela Rueda. ECF No. 127 at 3.

On or about July 5, 2025, law enforcement listened to a phone call Defendant Rueda placed from Johnson County jail to her mother. ECF No. 231 at 11.[1] In the call, Rueda repeatedly told her mother to call "Danny" because he knew everything and could explain it to her. ECF

---

[1] While the Court cites the Government's response, the Court finds pertinent to note that the phone call transcripts are in the record attached to a different Motion. *See* ECF No. 201-1–201-4.

No. 231 at 11. While Rueda told her mother "Danny" had nothing to "it," she also stated "Danny" would get in touch with "the community." ECF No. 231 at 11.

The next day around 10:55 a.m., Rueda called Sanchez from Johnson County jail. ECF No. 231 at 11. During the call, Rueda informed Sanchez of her car's location and that her phone was in the car. ECF No. 231 at 11. She told Sanchez that her daughter knew the code to the phone and to "do what you need to do." ECF No. 231 at 11. Rueda proceeded to tell Sanchez to tow her car and expressed concerns about police potentially obtaining a warrant for her house to which Sanchez replied that the house was "good." ECF No. 231 at 12.

While Rueda was on the phone with Sanchez, FBI agents and TFOs (collectively, "agents") started watching Sanchez's parents' residence which was associated with Sanchez. ECF No. 231 at 12; *see* ECF No. 202 at 5. Around 11:43 a.m., the agents saw Sanchez come out of the residence and loaded three boxes, a white trash bag, an accordion-style file folder, and an animal carrying container into a white, Chevrolet Silverado pickup registered to Sanchez. ECF No. 231 at 12. The agents followed Sanchez to an apartment where he dropped off one box at the front door. ECF No. 231 at 13. The agents then followed Sanchez as he left the apartment complex and radioed Denton police (DPD) to assist by conducting a high risk felony traffic stop on Sanchez. ECF No. 231 at 13; ECF No. 202 at 5–6. The agents circled back to the apartment and no package was seen at or near that apartment. ECF No. 231 at 14.

Following orders from the agents, DPD then stopped Sanchez's vehicle, arrested him, and searched his car. *See* ECF No. 202 at 6–8. The reason for Sanchez's warrantless arrest was not communicated to DPD. *See* ECF No. 202 6–9; *see also* ECF No. 231 at 13. DPD seemingly believed that they needed independent probable cause or reasonable suspicion to arrest Sanchez. *See* ECF No. 202 at 7–10. DPD then scrambled to piece together a pretextual stop. *See id*.

## LEGAL STANDARD

The Fourth Amendment guarantees individuals the right "to be secure in their persons, houses, papers, and effects, against

2

unreasonable searches and seizures." U.S. Const. amend. IV. A warrantless arrest and search is "presumptively unreasonable unless the circumstances fall under an exception to the Fourth Amendment's warrant requirement." *United States v. Clayton*, 98 F.4th 256, 261 (5th Cir. 2024); *United States v. Thomas*, 997 F.3d 603, 609 (5th Cir. 2021). An exception to a warrantless arrest and warrantless search is probable cause. *Clayton*, 98 F.4th at 263; *United States v. Robles*, No. 98-10110, 1999 U.S. App. LEXIS 40013, at *42 (5th Cir. 1999).

Probable cause is determined by the totality of the circumstances. *Clayton*, 98 F.4th at 263. The probable cause inquiry for a warrantless *search* asks whether "there is a fair probability that contraband or evidence of a crime will be found in a particular place." *Illinois v. Gates*, 462 U.S. 213, 238 (1983). Probable cause exists for a warrantless *arrest* "when the totality of facts and circumstances within a police officer's knowledge at the moment of arrest are sufficient for a reasonable person to conclude that the suspect had committed, or was in the process of committing, an offense." *Robles*, 1999 U.S. App. LEXIS 40013, at *42.

The Supreme Court has "instructed that we must be cautious about second-guessing a police officer's assessment, 'made on the scene, of the danger presented by a particular situation.'" *Velasquez v. Audirsch*, 574 Fed. Appx. 476, 482 (5th Cir. 2014) (quoting *Ryburn v. Huff*, 565 U.S. 469, 476–77 (2012)).

## ANALYSIS

The Court must answer two questions regarding this Motion. *First* whether the arresting officers needed independent probable cause to make a warrantless arrest of Sanchez and search his car. If not, *second*, whether the agents had probable cause that was imputed to the arresting officers.

### I. The knowledge of the agents is imputed to the arresting officers under the collective knowledge doctrine.

"Under the collective knowledge doctrine, it is not necessary for the arresting officer to know all of the facts amounting to probable cause, as long as there is some degree of communication between the arresting officer and an officer who has knowledge of all the necessary facts."

3

*United States v. Willis*, 304 Fed. Appx. 256, 258 (5th Cir. 2008) (quoting *United States v. Ibarra*, 493 F.3d 526, 530 (5th Cir. 2007)). In fact, the arresting officer need not possess personal knowledge of the probable cause at all. *See Ibarra*, 493 F.3d at 530. This is because the actual knowledge of probable cause is "imputed to the arresting officers." *Willis*, 304 Fed. Appx. at 258. The collective knowledge doctrine "is a matter of common sense: it minimizes the volume of information concerning suspects that must be transmitted to other jurisdictions and enables police in one jurisdiction to act promptly in reliance on information from another jurisdiction." *United States v. Hensley*, 469 U.S. 221, 231 (1985).

In *Willis*, a detective with the Baton Rouge Police Department ("BRPD") and an agent of the Drug Enforcement Administration ("DEA") asked the BRPD for help finding and arresting the defendant. 304 Fed. Appx. at 257. "The district court found that the police did not have probable cause to arrest Willis, because [the police] lacked personal knowledge of the probable cause." *Id.* at 258. However, the United States Court of Appeals for the Fifth Circuit reversed, holding that the police had probable cause under the "collective knowledge doctrine." *Id.* The Fifth Circuit continued, stating even though the orders to arrest came through a dispatcher and *did not specify the conduct that led to the arrest order*, the collective knowledge doctrine applies." *Id.* (emphasis added).

Here, the arresting officers lacked personal knowledge of the facts giving rise to probable cause for an arrest of Sanchez and the subsequent search of his vehicle. But, under the collective knowledge doctrine, the knowledge of the agents are imputed to the arresting officers. Therefore, the arresting officers did not need independent probable cause to stop and arrest Sanchez or to search his car. While the actions of the arresting officers were dubious, they do not control the analysis. The decisive inquiry before the Court then is whether, at the time of warrantless arrest and search, probable cause existed for the agents.

## II. The agents had probable cause for a warrantless arrest and subsequent search of the vehicle.

4

As aforementioned, probable cause is determined by the totality of the circumstances. *Clayton*, 98 F.4th at 263. Viewing the totality of the circumstances, probable cause existed at the time of Sanchez's arrest and search of his car. Rueda's phone call to her mother stated that Sanchez had knowledge of the events that occurred and could get in touch with "the community." This call came one day after the events at the Prairieland ICE facility where an Alvarado police officer was shot and injured. In the phone call to Sanchez on July 6, Rueda talked about police getting warrants to search houses to which Sanchez said that the house was "good;" she told Sanchez to tow her car; and informed Sanchez to "do what [he] need[s] to do."

Additionally, two days after the events at the Prairieland Detention Center, the agents witnessed Sanchez load three boxes, a white trash bag, and an accordion-style file folder into his truck and offload at least one box onto another's porch. After Sanchez made the drop of one of the boxes, the box was quickly picked up by someone in the short time that the agents saw the drop then circled back.

Taken together, a reasonable person would conclude that Sanchez was in the process of concealing documents with the intent to impair their availability and use in an official proceeding, which is an offense under 18 U.S.C. § 1512(c)(1) and (k). Thus, the agents had probable cause to arrest Sanchez. Additionally, there was a fair probability that evidence of a crime would be found in Sanchez's truck, supplying the agents with probable cause for the search of his vehicle. Because the actual knowledge of the facts giving rise to the probable cause is imputed to the arresting officers, the warrantless arrest of Sanchez and search of his car was supported by probable cause and did not violate Sanchez's Fourth Amendment rights.

## CONCLUSION

Accordingly, the Motion to Suppress is **DENIED.**

**SO ORDERED** on this **16th day of February 2026.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE